656 N.W.2d 253 (2003)
265 Neb. 253
In re Interest of J.K., a child under 18 years of age.
State of Nebraska, Appellee,
v.
Douglas R. Switzer and Jessica A. Kerkhofs, guardians ad litem, Appellants, and
William K. and Constance K., adoptive parents of child, and Nebraska Department of Health and Human Services, Appellees.
No. S-02-438.
Supreme Court of Nebraska.
January 31, 2003.
*257 Douglas R. Switzer and Jessica A. Kerkhofs, of Nebraska Legal Services, guardians ad litem for J.K., pro se.
Marian G. Heaney, of Nebraska Legal Services, for appellants.
James S. Jansen, Douglas County Attorney, and James M. Masteller for appellee State of Nebraska.
Hendry, C.J., Wright, Connolly, Gerrard, Stephan, McCormack, and Miller-Lerman, JJ.
CONNOLLY, J.
The separate juvenile court of Douglas County adjudicated J.K. under Neb.Rev. Stat. § 43-247(3)(a) (Cum.Supp.2002). J.K.'s guardians ad litem argue that J.K. was entitled to separate counsel under Neb.Rev.Stat. § 43-272(3) (Cum.Supp. 2002). This section provides in part, "A guardian ad litem shall act as his or her own counsel and as counsel for the juvenile, unless there are special reasons in a particular case why the guardian ad litem or the juvenile or both should have separate counsel." We conclude that the juvenile court did not abuse its discretion in refusing to appoint separate counsel. We affirm.

I. FACTUAL BACKGROUND
In March 2002, the Douglas County Attorney filed a petition in the separate juvenile court of Douglas County, asking the court to find that J.K. was a child within *258 the meaning of § 43-247(3)(a) because he was without support through no fault of his parents. In the petition, the State alleged that J.K. exhibits suicidal and homicidal tendencies and that the treating psychiatrist determined that J.K. should be placed in a residential treatment center for psychiatric care.
One of J.K.'s guardians ad litem moved to have the court appoint separate legal counsel for J.K. The guardian ad litem argued that special reasons existed under § 43-272(3) requiring the appointment of separate counsel for J.K.
The court refused to appoint separate counsel. The court noted that the proceedings were brought pursuant to § 43-247(3)(a), under which the parents are charged with being unable to meet the juvenile's needs, rather than § 43-247(3)(b) or (c). The court determined that the only issue was whether J.K.'s parents could provide for his care. It held the guardian ad litem could adequately "defend any issues concerning his placement and the appropriateness of his placement and/or any care that he might require in his best interests and to promote his health and safety."
In April 2002, J.K.'s parents entered pleas of admission to the petition and the county attorney gave a factual basis for the charges. The county attorney described J.K.'s mental health history, including times when he had demonstrated suicidal or homicidal tendencies. The court also received into evidence the affidavit of J.K.'s treating psychiatrist. He recommended that J.K. be placed "in [a residential treatment center] to meet his needs, which would include a locked, structured environment, school program ... chemical dependency treatment, and psychiatric care." The county attorney stated that the parents had tried to address the juvenile's needs at home and by treatment, but had failed. He stated they needed the court's assistance in placing J.K. into a residential, long-term treatment facility. Over one of the guardian ad litem's objection, the court accepted the plea and found the factual basis sufficient to adjudicate J.K. The guardians ad litem appealed.

II. ASSIGNMENT OF ERROR
The guardians ad litem assign that the juvenile court erred in finding that special reasons did not exist in the present case requiring separate legal counsel for the juvenile.

III. STANDARD OF REVIEW
Statutory interpretation presents a question of law, on which an appellate court has an obligation to reach an independent conclusion irrespective of the decision made by the court below. Newman v. Thomas, 264 Neb. 801, 652 N.W.2d 565 (2002).

IV. ANALYSIS

1. STATUTORY BACKGROUND
The State proceeded under § 43-247(3)(a), which, in part, provides that the juvenile court shall have jurisdiction of any juvenile "who is homeless or destitute, or without proper support through no fault of his or her parent, guardian, or custodian." The dual purpose of proceedings under § 43-247(3)(a) is to protect the welfare of the minor and to safeguard the parents' right to properly raise their child. In re Interest of Constance G., 247 Neb. 629, 529 N.W.2d 534 (1995).
This case requires us to consider how the interests of the juvenile are represented in § 43-247(3)(a) proceedings. The question is governed by § 43-272(2) and (3). Section 43-272(2)(e) requires that the court appoint a guardian ad litem for the juvenile "in any proceeding pursuant to *259 the provisions of [§ 43-247(3)(a) ]." Section 43-272(3) requires that the person appointed be an attorney. It also provides that "a guardian ad litem shall act as his or her own counsel and as counsel for the juvenile, unless there are special reasons in a particular case why the guardian ad litem or the juvenile or both should have separate counsel."
The plain language of § 43-272(2) and (3) envisions a dual role for an attorney appointed under these subsections. First, the attorney serves as guardian ad litem. Generally, a guardian ad litem determines the best interests of the juvenile and reports that determination to the court. Betz v. Betz, 254 Neb. 341, 575 N.W.2d 406 (1998). Under the Nebraska Juvenile Code, the guardian ad litem is given somewhat broader powers; he or she not only determines and reports to the court what is in the juvenile's best legal and social interests, but also advocates that position. Neb.Rev.Stat. § 43-272.01 (Reissue 1998); In re Interest of Rachael M. & Sherry M., 258 Neb. 250, 603 N.W.2d 10 (1999). Second, an attorney appointed under § 43-272(2) and (3) serves as counsel for the juvenile. As counsel, an attorney is required to zealously advocate the wishes of the juvenile (as opposed to the best interests of the juvenile), as long as those wishes are within the bounds of the law. Orr v. Knowles, 215 Neb. 49, 337 N.W.2d 699 (1983); Canon 7, EC 7-1, of the Code of Professional Responsibility.
The juvenile code recognizes that generally, the roles of guardian ad litem and counsel can be carried out by the same attorney. But the code requires that the roles be split when there are "special reasons in a particular case." § 43-272(3). The guardians ad litem argue that special reasons are present and thus that the court should have appointed separate counsel for J.K.

2. INTERPRETATION OF "SPECIAL REASONS IN A PARTICULAR CASE"
In the absence of anything to the contrary, statutory language is to be given its plain and ordinary meaning; an appellate court will not resort to interpretation to ascertain the meaning of statutory words which are plain, direct, and unambiguous. Newman v. Thomas, 264 Neb. 801, 652 N.W.2d 565 (2002).
Although "special reasons in a particular case" is broad, it is not vague or ambiguous. It grants juvenile courts broad power to safeguard the interests of the juvenile and to ensure that the juvenile's statutory and constitutional rights are respected. See Neb.Rev.Stat. § 43-246 (Reissue 1998) (setting out guidelines for construing the juvenile code). Thus, the determination whether "special reasons" exist must be based on a case-by-case basis, taking into consideration the totality of circumstances. We do note that in determining whether special reasons are present in a case, the juvenile courts should be particularly wary of the ethical implications that result from combining the roles of guardian ad litem and counsel for the juvenile in one person. See, Rebecca H. Heartz, Guardians Ad Litem in Child Abuse and Neglect Proceedings: Clarifying the Roles to Improve Effectiveness, 27 Fam. L.Q. 327 (1993).

3. STANDARD OF REVIEW FOR DETERMINING IF SPECIAL REASONS ARE PRESENT
Before we turn to the question whether special reasons exist requiring the appointment of separate counsel, we must determine the appropriate standard of review. Generally, juvenile cases are reviewed de novo on the record, and the appellate court is required to reach a conclusion independent of the trial court's *260 findings. In re Interest of Anthony R. et al., 264 Neb. 699, 651 N.W.2d 231 (2002). We have, however, employed an abuse of discretion standard in situations when the Legislature has granted the juvenile courts broad discretion to act or not to act. See, e.g., In re Interest of Brandy M. et al., 250 Neb. 510, 550 N.W.2d 17 (1996) (holding prompt adjudication determinations are reviewed de novo to determine if there has been abuse of discretion); In re Interest of D.D.P., 235 Neb. 864, 458 N.W.2d 193 (1990) (holding whether juvenile should be present during § 43-247(3)(a) proceedings rests in discretion of court). The Legislature has granted broad power to the juvenile courts to determine whether the guardian ad litem role and the role of counsel for the juvenile should be split. Accordingly, we review the decision whether to use that power de novo on the record for an abuse of discretion.

4. DO SPECIAL REASONS EXIST?
The guardians ad litem argue that three grounds exist for concluding that special reasons exist: (1) a conflict between their roles as guardians ad litem and counsel for J.K.; (2) procedural due process required the appointment of separate counsel; and (3) the legal and social interests of J.K., as determined by the guardians ad litem, conflicted.
A judicial abuse of discretion exists when a judge, within the effective limits of authorized judicial power, elects to act or refrains from acting, and the selected option results in a decision which is untenable and unfairly deprives a litigant of a substantial right or a just result in matters submitted for disposition through a judicial system. Gallner v. Hoffman, 264 Neb. 995, 653 N.W.2d 838 (2002). On the record before us, the juvenile court did not abuse its discretion in refusing to find that special reasons existed requiring the appointment of separate counsel.

(a) Conflict of Interest
A conflict of interest can develop between the roles of counsel for the juvenile and guardian ad litem if the juvenile expresses interests that are adverse to what the attorney considers to be in the juvenile's best interests. See, In re C.D., 27 S.W.3d 826 (Mo.App.2000); In re Shaffer, 213 Mich.App. 429, 540 N.W.2d 706 (1995); In re Interest of G.Y., 486 N.W.2d 288 (Iowa 1992); In re Baby Girl Baxter, 17 Ohio St.3d 229, 479 N.E.2d 257 (1985); Heartz, supra; ABA Standards of Practice for Lawyers Representing a Child in Abuse and Neglect Cases A-2 cmt. (1996), at www.abanet.org/child/childrep.html. As counsel for the juvenile, the attorney is bound to advocate the juvenile's expressed interests; but, as guardian ad litem, the attorney is bound to present what he or she believes to be in the child's best interests. Usually, when an actual conflict of interest develops between the two roles, separate counsel should be appointed for the child.
The guardians ad litem argue that a conflict of interest existed between their role as guardians ad litem and their role as counsel for J.K. They claim that the court should have appointed separate counsel for J.K. The State sought to confine J.K. in a residential treatment facility. On appeal, the guardians ad litem state that they believe this confinement to be in the best interests of the juvenile. Nothing in the record suggests that J.K. ever expressed contrary wishes, and the guardians ad litem did not inform the court that a conflict existed. Rather, the guardians ad litem suggest that we should presume that J.K. had contrary wishes because the State sought to limit his liberty. A review of the record, however, shows that J.K.'s psychological *261 problems led to a troubled homelife and that his parents sought intervention from the State. Under these circumstances, the court was under no obligation to presume that J.K. opposed being taken away from his parents and placed into a residential treatment facility. The juvenile court did not abuse its discretion in refusing to find an actual conflict between the roles of guardians ad litem and counsel for the juvenile. Accord In re C.D., supra.

(b) Due Process
The guardians ad litem next argue that "special reasons" existed because procedural due process required that J.K. be appointed separate counsel. This argument is without merit. The guardians ad litem rely on In re Gault, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967). In re Gault, however, applies to "proceedings to determine delinquency which may result in commitment to an institution." (Emphasis supplied.) 387 U.S. at 41, 87 S.Ct. 1428. While this case involves a juvenile's being committed to a locked, residential treatment center, it does not involve delinquency. Rather, it was brought under § 43-247(3)(a), and the question is whether J.K.'s parents could provide him with the psychological care he needed. See In re Interest of D.D.P., 235 Neb. 864, 458 N.W.2d 193 (1990).
"This is not to say that children are without legal rights which must be protected in proceedings under § 43-247(3)(a)." In re Interest of D.D.P., 235 Neb. at 868, 458 N.W.2d at 197. We have recognized that Parham v. J.R., 442 U.S. 584, 99 S.Ct. 2493, 61 L.Ed.2d 101 (1979), establishes due process requirements when parents civilly commit a child. Thus, Parham provides the requisite due process requirements instead of In re Gault. See In re Interest of D.D.P., supra. Parham does not require a right to counsel, let alone splitting the roles of guardian ad litem and counsel for the juvenile.

(c) Conflict Between J.K.'s Legal and Social Interests
Section 43-272.01(2) provides a nonexhaustive list of criteria that the guardian ad litem is to consider in discharging his or her duties. Section 43-272.01(2)(b) requires the guardian ad litem to defend the juvenile's legal and social interests. The guardians ad litem argue that a conflict existed between what they considered to be J.K.'s legal interests and what they considered to be J.K.'s social interests. The guardians ad litem claim that they could not adequately defend either interest and that separate counsel should have been appointed to defend J.K.'s legal interests.
As we understand it, this argument is different from the guardians ad litem's claim that a conflict of interest existed because J.K. had expressed interests different from what the guardians ad litem thought were in J.K.'s best interests. Rather, we understand their argument to be that a conflict existed because they had concluded that treatment was in J.K.'s best social interests but that challenging the constitutionality of the proceedings was in J.K.'s best legal interests.
Although situations might exist when the juvenile's legal interests are so divergent with the juvenile's social interests that one person cannot adequately represent both, this case does not present that problem. The juvenile court did not abuse its discretion. If the guardians ad litem believed that J.K. should have been committed for treatment, this would not have prevented J.K. from arguing that the State and the court were not following the requisite statutory and constitutional procedures. In fact, the record shows that the guardians ad litem did just that.

*262 V. CONCLUSION
The juvenile court did not abuse its discretion in refusing to appoint separate counsel for J.K. Accordingly, we affirm.
AFFIRMED.